# Exhibit A

State of Idaho
## DEPARTMENT OF INSURANCE

*C.L. "BUTCH" OTTER*
*Governor*

700 West State Street, 3rd Floor
P.O. Box 83720
Boise, Idaho 83720-0043
Phone (208) 334-4250    Fax (208) 334-4298
http://www.doi.idaho.gov

*DEAN L. CAMERON*
*Director*

**To:**  SELECTHEALTH, INC
c/o CORPORATION SERVICE COMPANY
12550 W EXPLORER DR STE 100
BOISE, ID 83713-1890

**CC:**  Plaintiff's counsel (w/o Enclosures) via First Class Mail

**From:** Idaho Department of Insurance

**Date:** 8/8/2018

**Re:**  NOTICE OF SUMMONS AND COMPLAINT AND DEMAND FOR JURY TRIAL OF
THE FOURTH JUDICIAL DISTRICT OF THE STATE OF IDAHO, IN AND FOR
THE COUNTY OF ADA CASE NO. CV 01-18-13653.

RENNIE vs SELECTHEALTH, INC, et al.

---

YOU WILL PLEASE TAKE NOTICE that a due and regular service of a SUMMONS
AND COMPLAINT AND DEMAND FOR JURY TRIAL, in connection with the above-entitled
action, was made upon you by CERTIFIED MAIL on the SIXTH day of AUGUST, 2018, by
delivering in Boise, Idaho, on the said date to the Director of the Department of Insurance, State
of Idaho, who is the duly and regularly appointed Statutory Agent.  A copy of each instrument is
enclosed herewith to you as provided by law.

IN WITNESS WHEREOF, I have hereunto set my hand and the official seal of this office
at Boise, Idaho, this EIGHTH day of AUGUST, 2018.

*Dean L. Cameron* /pm
Dean L. Cameron
Director
Department of Insurance
State of Idaho

Cert Num. 70160750000021661417

Electronically Filed
7/25/2018 11:48 PM
Fourth Judicial District, Ada County
Christopher D. Rich, Clerk of the Court
By: Lori Ferguson, Deputy Clerk

Michael F. Lutz (ISB # 9218)
THE SPENCE LAW FIRM, LLC
P.O. Box 548
15 S. Jackson Street
Jackson, WY 83001
(307) 733-7290 / (307) 733-5248 (fax)
lutz@spencelawyers.com

*Attorney for the Plaintiffs*

Hoagland, Samuel

## IN THE DISTRICT COURT OF THE FOURTH JUDICIAL DISTRICT
## OF THE STATE OF IDAHO, IN AND FOR THE COUNTY OF ADA

| | |
|---|---|
| JASON M. RENNIE; KATHLEEN P. MARGARET RENNIE; L.R., a minor child, by and through his parents and next friends Jason and Kathleen Rennie; and C.R., a minor child, by and through her parents and next friends Jason and Kathleen Rennie, <br><br> Plaintiffs, <br><br> vs. <br><br> SELECTHEALTH, INC.; MARC RUECKERT; JILLYN KRISTENSEN; EMILY N. JOHNSON; "ALYSSA T."; and JOHN AND JANE DOES I THROUGH X, <br><br> Defendants. | Case No. _____ CV01-18-13653 _____ <br><br> SUMMONS ON DEFENDANT SELECTHEALTH, INC. |

NOTICE

YOU HAVE BEEN SUED. THE COURT MAY ENTER JUDGMENT AGAINST YOU

WITHOUT FURTHER NOTICE UNLESS YOU RESPOND. READ THE

INFORMATION BELOW.

SUMMONS ON DEFENDANT SELECTHEALTH, INC. — 1

TO:    SELECTHEALTH, INC.

If you want to defend this lawsuit, you must file a written response (Answer or appropriate Idaho Rule of Civil Procedure Rule 12 Motion) to the Complaint at the Court Clerk's office for the above-listed District Court at:

> Ada County Courthouse
> 200 W. Front Street
> Boise, ID 83702
> (208) 287-7070

within 30 days after substituted service of this Summons on the Idaho Director of Insurance. *See* I.C. § 41-334(3).

If you do not file a written response the court may enter a judgment against you without further notice. A letter to the Judge is not an appropriate written response.

The written response must comply with Rule 2 and other Idaho Rules of Civil Procedure and include: your name, mailing address and telephone number; or your attorney's name, mailing address and telephone number; and the title and number of this case.

If your written response is an Answer, it must state the things you agree with and those you disagree with that are in the Complaint. You must also state any defenses you have.

You must mail or deliver a copy of your response to the Plaintiff or Plaintiff's attorney (at the address listed above), and prove that you did.

To determine whether you must pay a filing fee with your response, contact the Clerk of the District Court.

SUMMONS ON DEFENDANT SELECTHEALTH, INC. — 2

If you are considering talking to an attorney, you should do so quickly to protect your legal rights.

DATED _____7/25/2018 11:48 PM_____, 2018.

CHRISTOPHER D. RICH

CLERK OF THE DISTRICT COURT

By _L Ferguson_____
        Deputy Clerk

Electronically Filed
7/25/2018 11:48 PM
Fourth Judicial District, Ada County
Christopher D. Rich, Clerk of the Court
By: Lori Ferguson, Deputy Clerk

Michael F. Lutz (ISB # 9218)
THE SPENCE LAW FIRM, LLC
P.O. Box 548
15 S. Jackson Street
Jackson, WY 83001
(307) 733-7290 / (307) 733-5248 (fax)
lutz@spencelawyers.com

*Attorney for the Plaintiffs*

## IN THE DISTRICT COURT OF THE FOURTH JUDICIAL DISTRICT OF THE STATE OF IDAHO, IN AND FOR THE COUNTY OF ADA

| | |
|---|---|
| JASON M. RENNIE; KATHLEEN P. MARGARET RENNIE; L.R., a minor child, by and through his parents and next friends Jason and Kathleen Rennie; and C.R., a minor child, by and through her parents and next friends Jason and Kathleen Rennie, <br><br> Plaintiffs, <br><br> vs. <br><br> SELECTHEALTH, INC.; MARC RUECKERT; JILLYN KRISTENSEN; EMILY N. JOHNSON; "ALYSSA T."; and JOHN AND JANE DOES I THROUGH X, <br><br> Defendants. | CV01-18-13653 <br><br> Case No. _____ <br><br><br> COMPLAINT AND DEMAND FOR JURY TRIAL |

## I.    PARTIES

### The Rennie Family

1.    Plaintiff Jason Rennie is a Canadian citizen domiciled in British Columbia.

2.    Plaintiff Kathleen Rennie is a Canadian citizen domiciled in British Columbia.

3.    Mr. and Mrs. Rennie are, and at all relevant times were, lawfully married as husband and wife.

COMPLAINT AND DEMAND FOR JURY TRIAL — 1

4.    Plaintiff L.R. is a minor child with dual United States and Canadian citizenship domiciled in British Columbia.

5.    Plaintiff C.R. is a minor child with dual United States and Canadian citizenship domiciled in British Columbia.

6.    As minors, L.R. and C.R. lack the capacity to sue in their own names.  Mr. and Mrs. Rennie are L.R. and C.R.'s parents; are responsible for managing L.R. and C.R.'s affairs; and their interests are aligned with L.R. and C.R.'s interests.  As such, Mr. and Mrs. Rennie are proper next friends of L.R. and C.R. to bring an action on their behalf pursuant to I.R.C.P. 17(c)(2) and I.C. § 5-306.

7.    Collectively Mr. Rennie, Mrs. Rennie, L.R., and C.R. will be referred to as "the Rennies" or "the Rennie Family."

### Defendants

8.    Defendant SelectHealth, Inc. ("SelectHealth") is, and at all relevant times was, a Utah corporation that principally does business in Utah.

9.    On information and belief, SelectHealth operates in Idaho as a managed care organization as defined in I.C. § 41-3903(14).

10.   As a corporation, SelectHealth can act only through its officers, directors, agents, and employees.

11.   SelectHealth is vicariously liable for those individuals' acts and omissions within the course and scope of their duties.

12.   Defendant Marc Rueckert is a Utah citizen.

13.    At all relevant times, Mr. Rueckert was the Director of Audit, Investigations, and Recovery Services at SelectHealth.

14.    Defendant Jillyn Kristensen is a Utah citizen.

15.    At all relevant times, Ms. Kristensen was the High Dollar Auditing Supervisor at SelectHealth.

16.    Defendant Emily N. Johnson is a Utah citizen.

17.    At all relevant times, Ms. Johnson was an Appeals Manager at SelectHealth.

18.    On information and belief, Ms. Johnson's true name may be Emily N. Matthews.

19.    Defendant Alyssa T.'s true and complete name is unknown to, and not reasonably discoverable by, the Rennies.

20.    On information and belief, Ms. T. is a Utah citizen.

21.    At all relevant times, Ms. T. was an Appeal Specialist at SelectHealth.

22.    On information and belief, Mr. Rueckert, Ms. Kristensen, Ms. Johnson, and Ms. T. were individually and jointly responsible for intentionally, wrongfully, and maliciously rescinding L.R. and C.R.'s healthcare coverage, as detailed below.

23.    On information and belief, all of Mr. Rueckert, Ms. Kristensen, Ms. Johnson, and Ms. T.'s relevant acts and omissions were undertaken within the course and scope of their employment with SelectHealth.

24.    John and Jane Does I through X are SelectHealth's other agents, employees, and/or independent adjusters who were also responsible for intentionally, wrongfully, and maliciously rescinding L.R. and C.R.'s healthcare coverage.

25.    The Rennies do not know and in the exercise of reasonable diligence cannot discover John and Jane Does I through X's true names or job titles because, without

the benefit of discovery, they cannot learn the internal details of SelectHealth's claims and appeals handling.

26. On information and belief, John and Jane Does I through X are Utah citizens.

27. On information and belief, all of John and Jane Does I through X's relevant acts and omissions were within the course and scope of their employment with SelectHealth or independent contracts with SelectHealth.

28. Hereinafter, Mr. Rueckert, Ms. Kristensen, Ms. Johnson, Ms. T., and John and Jane Does I through X will be referred to as "the Individual Defendants."

29. On information and belief, the Individual Defendants benefitted personally from denying high-dollar claims on pretextual grounds, in the form of favorable performance ratings and reviews, bonuses, and/or promotions.

## II.    JURISDICTION AND VENUE

30. This Court has jurisdiction over this action pursuant to I.C. § 1-705 and other applicable laws.

31. The amount in controversy exceeds this Court's jurisdictional minimum.

32. This Court has specific personal jurisdiction over Defendants because this action arises from their administration of an insurance contract entered into in Idaho for the purposes of covering medical expenses incurred in Idaho.

33. Jurisdiction is also proper pursuant to I.C. § 5-514 because this action arises from Defendants' transaction of business in Idaho and contracting to insure persons and risks located in Idaho at the time of contracting.

COMPLAINT AND DEMAND FOR JURY TRIAL — 4

34.     Venue is proper in this Court pursuant to I.C. § 5-404 because none of the Defendants reside in Idaho, the Rennies designate Ada County as the venue, and their causes of action arose in Ada County.

### III.   FACTS

**L.R. AND C.R. ARE BORN PREMATURELY AND SUFFER SERIOUS MEDICAL COMPLICATIONS**

35.     L.R. and C.R. were born on February 29, 2016 in Boise, Idaho to a surrogate mother.

36.     They were born prematurely, at twenty-seven weeks and two days.

37.     L.R. was 2 pounds, 3.6 ounces at the time of birth.

38.     C.R. was 2 pounds, 6.2 ounces at the time of birth.

39.     L.R. and C.R. were critically ill as a result of their premature births.

40.     They suffered from Respiratory Distress Syndrome and were unable to breathe without the assistance of ventilators.

41.     L.R. and C.R. received extensive care and treatment at St. Luke's Health System ("St. Luke's) in Boise.

42.     Between L.R.'s birth and the time he eventually left Boise, L.R. incurred approximately $518,000 in medical bills.

43.     Between C.R.'s birth and the time she eventually left Boise, C.R. incurred approximately $451,000 in medical bills.

**L.R. AND C.R. LIVE AND/OR RESIDE IN BOISE, IDAHO**

44.     L.R. and C.R. lived and/or resided in Boise continuously from their conception until May 23, 2016.

COMPLAINT AND DEMAND FOR JURY TRIAL — 5

45.   Mr. and Mrs. Rennie rushed to Boise and arrived the day after L.R. and C.R. were born, on March 1, 2016.

46.   Mr. and Mrs. Rennie intended that L.R. and C.R. would remain in Boise indefinitely until their medical conditions were stable.

47.   During the month of March, Mr. and Mrs. Rennie rented a home located at 618 W. Franklin St., Boise, ID 83702.

48.   On or about April 1, 2016, Mr. and Mrs. Rennie began renting a home located at 2291 N. 31st St., Boise ID 83702.

### JASON RENNIE APPLIES FOR COVERAGE FROM SELECTHEALTH FOR L.R. AND C.R.

49.   On March 17, 2016, the District Court of the Fourth Judicial District, in and for the County of Ada, Idaho entered an Order awarding parental rights over L.R. and C.R. to Mr. Rennie, and further awarding Mrs. Rennie joint legal custody and guardianship over L.R. and C.R. pending her later adoption of L.R. and C.R.

50.   On March 31, 2016, Mr. Rennie (through an insurance broker) completed substantially identical applications for coverage from SelectHealth on L.R. and C.R.'s behalf.

51.   The application form had blanks for "Street Address," "Mailing Address," "Billing Address," "Preferred Daytime Phone Number," and "Email address."

52.   As newborn infants, L.R. and C.R. lacked addresses, telephone numbers, or emails.

53.   The application form lacked any instructions for how an applicant was to fill in these blanks.

54.     Mr. Rennie filled out all of these blanks with the good-faith understanding that
SelectHealth was seeking the best contact information at which to get information
about L.R. and C.R. and to reach him without delay.

55.     Mr. Rennie provided the following address: 2291 N. 31st St., Boise ID 83702.

56.     This address was appropriate because that was where Mr. and Mrs. Rennie would
live and receive mail for the indefinite future.

57.     Had Mr. Rennie provided his address in Canada, he would not have received mail
from SelectHealth until an unknown point in the future when he returned, which
could be (and in fact was) many weeks later.

58.     For the preferred daytime telephone number, Mr. Rennie provided the telephone
number of a legal assistant at the surrogacy agency, with her consent.

59.     This was appropriate because Mr. and Mrs. Rennie were spending much of their
time in the hospital, where cell phones were not always allowed and where service
was unreliable.   By providing the legal assistant's phone number, Mr. Rennie
ensured that SelectHealth would be able to speak with a knowledgeable person
without delay, who could in turn relay any messages to him as needed.

60.     For the email address, Mr. Rennie provided the email address of the surrogacy
agency's owner, with her consent.

61.     Again, this was appropriate because it ensured that a knowledgeable person could
respond to emails without delay, and could relay messages to Mr. Rennie as
needed.

COMPLAINT AND DEMAND FOR JURY TRIAL — 7

62.    During the application process, SelectHealth never indicated that any of this contact and billing information would be used for any purpose other than contacting the Rennies and sending bills to them.

63.    Specifically, SelectHealth never indicated that the contact and billing information would be used to evaluate where L.R. and C.R. lived and/or resided for purposes of making a coverage determination.

64.    During the application process, SelectHealth never inquired about whether Mr. and Mrs. Rennie intended to move L.R. and C.R. out of Ada County at some indeterminate time in the future.

SELECTHEALTH CORRECTLY AGREES TO PROVIDE COVERAGE TO L.R. AND C.R.

65.    Section 2.2 of the Policy under which L.R. and C.R. were covered provides: "To be Eligible for Benefits, you must live, work or reside in the Service Area."

66.    Pursuant to § 15.76 of the Policy, the Service Area includes Ada County, Idaho.

67.    The Policy does not further define "live" or "reside."

68.    One can "live" or "reside" by staying temporarily in a place without having an intention to remain there permanently, in contrast to being "domiciled" in a place, which requires an intention to remain there permanently. *See, e.g., Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001); *Weible v. United States*, 244 F.2d 158, 163 (9th Cir. 1957); *In re Rodenbough*, 579 B.R. 545, 549 (Bankr. D. Idaho 2018); *In re Kline*, 350 B.R. 497, 501 & n.5 (Bankr. D. Idaho 2005); *Saint Alphonsus Reg'l Med. Ctr., Inc. v. Bd. of Cty. Comm'rs of Ada Cty.*, 146 Idaho 51, 54, 190 P.3d 870, 873 (2008).

COMPLAINT AND DEMAND FOR JURY TRIAL — 8

69.   L.R. and C.L. lived and/or resided in Ada County, Idaho throughout their gestation. *See* I.C. § 32-102 ("A child conceived, but not yet born, is to be deemed an existing person so far as may be necessary for its interests, in the event of its subsequent birth.").

70.   L.R. and C.R. also lived and/or resided in Ada County, Idaho after their births until May 23, 2016.

71.   Therefore, L.R. and C.R. were both insurable under the Policy during that period of time.

72.   SelectHealth agreed to provide coverage for L.R. and C.R.

73.   When SelectHealth began to receive medical bills, however, Defendants decided to fabricate a pretextual reason for rescinding L.R. and C.R.'s coverage.

74.   On information and belief, Defendants made a calculated decision that if they wrongfully rescinded coverage, St. Luke's would be left to absorb L.R. and C.R.'s medical bills.

**SELECTHEALTH WRONGFULLY RESCINDS COVERAGE FOR L.R. AND C.R.**

*SelectHealth May Rescind Coverage Only For Intentional Misrepresentations of Facts Material to Coverage*

75.   SelectHealth has a right to prospectively <u>terminate</u> coverage as of the date that L.R. and C.R. no longer lived or resided within the Service Area. *See* Policy at § 5.2(c).

76.   However, SelectHealth had no right to retroactively <u>rescind</u> coverage under Federal law, Idaho law, or the plain terms of the Policy.

77.   Pursuant to 45 C.F.R. § 147.128, a health insurer may not rescind coverage "unless the individual (or a person seeking coverage on behalf of the individual) performs

an act, practice, or omission that constitutes fraud, or unless the individual makes **an intentional misrepresentation of material fact,** as prohibited by the terms of the plan or coverage." (Emphasis added.)

78.     Pursuant to I.C. § 41-1811, an insurer may rescind coverage based on an alleged misrepresentation only in narrow, specifically enumerated circumstances.

79.     These legal requirements are read into the Policy by operation of law. *See Idaho AIDS Found., Inc. v. Idaho Hous. & Fin. Ass'n,* 422 F. Supp. 2d 1193, 1206 (D. Idaho 2006) ("Under Idaho law, contracts impliedly incorporate extant laws as well as policies of administrative agencies."); *Primary Health Network, Inc. v. State, Dep't of Admin.,* 137 Idaho 663, 666, 52 P.3d 307, 310 (2002) ("Existing law becomes part of a contract, just as though the contract contains an express provision to that effect, unless a contrary intent is disclosed.").

80.     The Policy likewise provides only very limited circumstances under which SelectHealth may rescind coverage.  The only provision that is even arguably relevant is § 5.2.1(a)(xv), under which SelectHealth could rescind coverage only due to a "**material misrepresentation in connection with insurability.**" (Emphasis added.)

### *Jason Rennie Helpfully Informs SelectHealth of The Rennies' Updated Contact Information*

81.     Upon returning to Canada, Mrs. Rennie promptly called SelectHealth to inquire about submitting a change of address.

82.     On June 17, 2016, Mr. Rennie provided his Canadian address and telephone number by email to SelectHealth.

83. The Rennies' actions illustrate that the Rennies had no intention of misrepresenting anything. Had the Rennies intended to mislead SelectHealth, they would have simply cancelled L.R. and C.R.'s coverage without explanation.

84. Ironically, Defendants have punished the Rennies — not for any intentional misrepresentation — but rather for their candor.

*SelectHealth Invokes Section 5.2 of the Policy to Rescind Coverage*

85. Without any explanation or prior notice, SelectHealth stopped covering L.R. and C.R.'s medical bills.

86. Mr. Rennie communicated with SelectHealth numerous times in an attempt to determine why SelectHealth was not covering the bills.

87. On July 18, 2016 Mr. Rennie explained to a SelectHealth representative that the address he provided was accurate.

88. On July 28, 2016, SelectHealth sent a Notice to the Rennies stating that it was rescinding coverage, effective on August 29, 2016, and retroactive to the date of L.R. and C.R.'s birth.

89. SelectHealth's only explanation for rescission was: "Pursuant to Provision 5.2 of the Contract, coverage is being rescinded because the Plan has determined that there was an intentional misrepresentation of a material fact in seeking coverage for benefits under the Plan. Specifically, false information was provided on the application including the physical address, phone number, and email address."

90.    The letter was not signed and the closing did not list an author.  However, on information and belief, Mr. Rueckert or Ms. Kristensen either authored the Notice or directed another SelectHealth employee to do so.

91.    Section 5.2 is the only Policy provision that SelectHealth has ever identified as justifying its rescission of coverage.

92.    The address, telephone number, and email that Mr. Rennie provided on the application are the only facts that SelectHealth has ever identified as supposedly constituting intentional, material misrepresentations.

93.    SelectHealth is estopped from attempting to raise new provisions in the Policy, new facts, or new legal grounds for rescinding coverage.

94.    Moreover, it would be an independent act of bad faith for SelectHealth to now raise new grounds for rescission years after denying coverage, after the Rennies have exhausted their internal appeal options, and after SelectHealth has forced the Rennies to institute litigation.  Idaho Code § 41-1329(14), which evidences the standard of care for claims handling in Idaho, provides that "[f]ailing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim" is an unfair or deceptive act or practice in the business of insurance.

95.    Mr. Rueckert and/or Ms. Kristensen's reasons for rescinding coverage were baseless, plainly contrary to the clear language of the Policy, and evidence intentional and malicious mistreatment of the Rennies.

96.    As detailed above, there was no misrepresentation in the application; even if the contact information could possibly be construed as a misrepresentation, it was

unintentional; and none of the contract information was material to insurability because L.R. and C.R. lived and/or resided in the Service Area.

97. In a subsequent telephone call, Mr. Rueckert accused Mr. Rennie of committing fraud.

### THE RENNIES CONTEST SELECTHEALTH'S RESCISSION OF COVERAGE

98. On August 10, 2016, the Rennies (through their attorney at that time) requested all information regarding SelectHealth's denial of coverage.

99. Because all of the correspondence with the Rennies was through their attorney in Boise, Idaho, Defendants knew or should have known that the Rennies were incurring attorney's fees as a result of its rescission of coverage.

100. On September 2, 2016, SelectHealth produced the documents that it relied on when denying coverage.

101. These documents included medical records detailing L.R. and C.R.'s serious and ongoing medical complications. Therefore, Defendants knew or should have known that the Rennie Family was vulnerable and under immense stress.

102. In its cover letters, SelectHealth accused the Rennies of "intentional misrepresentation of a material fact in seeking coverage for benefits under the Plan."

103. The letters were signed by "Emily N. Johnson, Appeals Manger, SelectHealth."

104. On December 15, 2016, the Rennies internally appealed SelectHealth's rescission of coverage.

105. Through the attorney who represented them at that time, the Rennies pointed out that the contact information was not a misrepresentation; that even if it was, it was unintentional; and that the contact information was not material.

106. On January 27, 2017, through the attorney who represented them at that time, the Rennies provided additional information verifying their residency at 2291 N. 31st St. from April 1, 2016 until May 23, 2016.

107. SelectHealth had an ample opportunity to reinstate coverage for medical bills that L.R. and C.R. incurred during the time they lived and/or resided in Boise.

108. However, on February 22, 2017, SelectHealth upheld its rescission in a letter signed by "Alyssa T., Appeal Specialist, SelectHealth."

109. Pursuant to § 12.6.1 of the Policy, SelectHealth was required to provide "any new or additional evidence or rationale considered, relied upon, or generated by SelectHealth in connection with the claim."

110. Ms. T. did not provide any new evidence, nor did she cite any provision of the Policy that supposedly justified rescission other than § 5.2.

111. Ms. T. claimed that the address, telephone number, and email were material because, if the Rennies had provided different information, then supposedly SelectHealth would have denied coverage from the outset on the grounds that L.R. and C.R. did not live and/or reside in the Service Area.

112. Ms. T. also relied on totally inapposite facts, such as the fact that the Rennies did not pay taxes in Idaho.

113. Nothing in the Policy indicates that paying taxes in Idaho is a relevant factor for determining coverage; nor did the application inquire about where any of the Rennies paid taxes.

114. L.R. and C.R. were infants who were not old enough to pay taxes, making Ms. T.'s argument patently absurd.

115. Moreover, while working in the Service Area was *sufficient* under the Policy to invoke coverage, it was not *necessary*.   In the alternative, it was also plainly sufficient to "live" or "reside" in the Service Area.

116. Ms. T.'s reasons for denying the appeal were baseless, plainly contrary to the clear language of the Policy, and evidence intentional and malicious mistreatment of the Rennies.

117. After SelectHealth denied their internal appeal, the Rennies pursued an external appeal to the Idaho Department of Insurance, which ultimately decided that it lacked jurisdiction resolve the coverage dispute.

118. The Rennies have been pursued by collections agencies seeking payment of L.R. and C.R.'s medical bills.

119. All of this occurred while the Rennies were trying to cope with their newborn babies' delicate medical conditions.

120. SelectHealth's callous mistreatment of the Rennies caused them severe anxiety, embarrassment, humiliation, shame, and emotional distress.

## IV.   CLAIMS

### COUNT ONE: BREACH OF CONTRACT
#### JASON RENNIE, L.R., AND C.R. AGAINST SELECTHEALTH

121.   Identical contracts existed between Jason Rennie and SelectHealth to provide health insurance for L.R. and C.R.

122.   L.R. and C.R. were third-party beneficiaries of those contracts, as the contracts were made expressly for their direct benefit.

123.   The Policy sets forth the contracts' terms.

124.   SelectHealth breached the contracts by failing to reimburse L.R. and C.R.'s medical providers for services rendered while L.R. and C.R. were living and/or residing in Boise, as the Policy required, and without any valid basis for rescinding coverage.

125.   The breach caused damages in the amount of the outstanding medical bills, including interest, costs, and fees associated with the delay in payment, and less any applicable deductibles, copays, and/or coinsurance.

126.   Additionally, as a natural and reasonably foreseeable result of SelectHealth's breach, Mr. Rennie incurred attorney's fees in pursuing SelectHealth's internal appeals process.

### COUNT TWO: BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
#### JASON RENNIE, L.R., AND C.R. AGAINST SELECTHEALTH

127.   Idaho recognizes that "An implied duty of good faith and fair dealing 'exists between insurers and insureds in every insurance policy.' " *Rizzo v. State Farm Ins. Co.*, 155 Idaho 75, 84, 305 P.3d 519, 528 (2013) (quoting *Mortensen v. Stewart Title Guar. Co.*, 149 Idaho 437, 445, 235 P.3d 387, 395 (2010)).

128.  "The covenant requires that 'the parties perform in good faith the obligations imposed by their agreement,' and a violation of the covenant occurs only when 'either party . . . violates, nullifies or significantly impairs any benefit' of the contract." *Id.* (quoting *Idaho First Nat. Bank v. Bliss Valley Foods*, 121 Idaho 266, 288, 824 P.2d 841, 863 (1991)).

129.  Pursuant to the implied covenant, SelectHealth had a duty to perform its obligations to the Rennies in good faith.

130.  SelectHealth failed to do so through acts and omissions including but not limited to: failing to consistently administer § 5.2.1(a)(xv) of the Policy, in that SelectHealth rescinded the L.R. and C.R.'s overage supposedly based on perceived inaccuracies in their contact information, but on information and belief SelectHealth did not similarly rescind other insureds' coverage based on perceived inaccuracies in their contact information.

### COUNT THREE: TORT OF INSURANCE BAD FAITH
### JASON RENNIE AGAINST SELECTHEALTH

131.  Idaho law recognizes a special relationship between insurers and insureds, based on "the adhesionary nature of the insurance contract including the potential for overreaching on the part of the insurer, and the unique, 'non-commercial' aspect of the insurance contract." *Weinstein v. Prudential Prop. & Cas. Ins. Co.*, 149 Idaho 299, 317, 233 P.3d 1221, 1239 (2010).

132.  Idaho law further "acknowledges the disparity in bargaining power between the insurer and insured" and recognizes that the insurer must treat the insured "fairly, honestly, and in good faith." *Id.* at 339, 233 P.3d at 1261.

COMPLAINT AND DEMAND FOR JURY TRIAL — 17

133. SelectHealth intentionally and unreasonably refused to discharge its obligations under the Policy.

134. SelectHealth's obligation to cover L.R. and C.R.'s medical expenses during the time that they lived and/or resided in Boise was not fairly debatable.

135. SelectHealth's failure to cover L.R. and C.R.'s medical expenses was not the result of a good-faith mistake.

136. Mr. Rennie has suffered harm not fully compensable by contract damages, including but not limited to anxiety, embarrassment, humiliation, shame, and emotional distress.

### COUNT FOUR: ATTORNEY'S FEES
### JASON RENNIE, L.R., AND C.R. AGAINST SELECTHEALTH

137. Pursuant to I.C. § 41-1839(1), an insurer must pay amounts justly due within thirty days. If the insurer fails to do so, in any subsequent action the Court must assess against the insurer a reasonable attorney's fee.

138. "The purpose of the statute is to provide an incentive for insurers to settle just claims in order to reduce the amount of litigation and the high costs associated with litigation. This Court has held that the statutory attorney fee is not a penalty but is an additional sum rendered as compensation when the insured is entitled to recover under the insurance policy, to prevent the sum therein provided from being diminished by expenditures for the services of an attorney." *Ferrell v. United Fin. Cas. Co.*, 155 Idaho 85, 88, 305 P.3d 529, 532 (2013) (quoting *Martin v. State Farm Mut. Auto. Ins. Co.*, 138 Idaho 244, 247, 61 P.3d 601, 604 (2002)).

139. "An insured submits a sufficient proof of loss 'when the insured provides the insurer with enough information to allow the insurer a reasonable opportunity to investigate and determine its liability.' " *Cedillo v. Farmers Ins. Co. of Idaho*, 158 Idaho 154, 165, 345 P.3d 213, 224 (2015) (quoting *Greenough v. Farm Bureau Mut. Ins. Co. of Idaho*, 142 Idaho 589, 593, 130 P.3d 1127, 1131 (2006)).

140. On information and belief, L.R. and C.R.'s healthcare providers promptly submitted bills for payment by SelectHealth.

141. SelectHealth failed to pay the amounts justly due within thirty days.

142. SelectHealth failed to comply with I.C. § 41-1839(1), and therefore Mr. Rennie, L.R., and C.R. are entitled to a reasonable attorney's fee.

### COUNT FIVE: NEGLIGENCE, GROSS NEGLIGENCE, MALICE, AND/OR RECKLESS DISREGARD
### JASON AND KATHLEEN RENNIE AGAINST ALL DEFENDANTS

143. The Individual Defendants remain personally liable for their own tortious conduct, regardless of whether it may have been within the course and scope of their employment. *See Forbush v. Sagecrest Multi Family Prop. Owners' Ass'n, Inc.*, 162 Idaho 317, 332, 396 P.3d 1199, 1214 (2017); *cf. Johnson v. Rimes*, 890 F. Supp. 2d 743, 746 (S.D. Miss. 2012); *C.P. ex rel. M.L. v. Allstate Ins. Co.*, 996 P.2d 1216, 1221 (Alaska 2000); *Morvay v. Hanover Ins. Companies*, 506 A.2d 333, 335 (N.H. 1986).

144. Defendants owed a duty of care to SelectHealth's insureds to be reasonably familiar with the applicable legal standards and contract provisions before rescinding coverage.

145. Defendants owed a duty of care to SelectHealth's insureds to conduct their work in a manner that would not foreseeably cause unjustified financial and emotional injuries to SelectHealth's insureds.

146. Defendants breached their duties by through acts and omissions including but not limited to: rescinding L.R. and C.R.'s coverage, fabricating justifications for rescinding coverage, refusing to consider the merits of the Rennies' internal appeal, and repeatedly accusing the Rennies of committing fraud.

147. Defendants' acts and omissions were negligent, grossly negligent, malicious, and/or were in reckless disregard of Mr. and Mrs. Rennie's rights.

148. Defendants' breaches directly and proximately caused Jason and Kathleen Rennie to suffer severe anxiety, embarrassment, humiliation, shame, and emotional distress, and forced them to incur attorney's fees while contesting SelectHealth's denial of coverage through SelectHealth's internal appeals process.

149. Jason and Kathleen have suffered physical manifestations of their emotional injuries.

#### COUNT SIX: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
#### JASON AND KATHLEEN RENNIE AGAINST ALL DEFENDANTS

150. Defendants intentionally, recklessly, and/or maliciously rescinded coverage based on an absurd and untenable misreading and misapplication of the Policy, and accused the Rennies of committing fraud without any factual basis for that accusation.

151. Defendants knew or should have known that the Rennies were vulnerable due to L.R. and C.R.'s fragile medical conditions.

COMPLAINT AND DEMAND FOR JURY TRIAL — 20

152. Defendants knew or should have known that denying coverage and falsely accusing the Rennies of committing fraud would result in serious embarrassment, financial hardship, and distress to the Rennies.

153. Defendants' misconduct was extreme and outrageous.

154. Defendants' misconduct directly and proximately caused Jason and Kathleen to suffer severe anxiety, embarrassment, humiliation, shame, and emotional distress.

## V.    PRAYER FOR RELIEF

The Rennies respectfully request that the Court enter judgment for them and against Defendants as follows:

1. Requiring SelectHealth to specifically perform its contractual obligations to reimburse St. Luke's and any other medical providers for services rendered to L.R. and C.R. while they lived and/or resided in Boise; or, in the alternative, requiring SelectHealth to pay the Rennies a money judgment sufficient to reimburse St. Luke's and any other medical providers for all sums due to them for services rendered while L.R. and C.R. lived and/or resided in Boise; with such reimbursement or payment to include all interest, costs, and fees caused by the delay in payment, less any applicable deductibles, copays, or coinsurance;

2. Requiring SelectHealth, pursuant to I.C. § 41-1839 and other applicable law, to pay the Rennies a reasonable attorney's fee necessitated by SelectHealth's rescission of coverage;

3. Requiring Defendants to reimburse Jason and Kathleen Rennie the sums they expended in attorney's fees while pursuing their internal appeal with SelectHealth;

4.    Requiring Defendants to compensate Jason and Kathleen Rennie for their anxiety, embarrassment, humiliation, shame, and emotional distress, not subject to the cap on noneconomic damages contained in I.C. § 6-1603(1), because this case arises from Defendants' willful or reckless misconduct pursuant to I.C. § 6-1603(4)(a);

5.    Awarding the Rennies pre-judgment interest pursuant to I.C. § 28-22-104(1) and other applicable law;

6.    Awarding the Rennies post-judgment interest pursuant to I.C. § 28-22-104(2) and other applicable law;

7.    Awarding the Rennies their costs of pursuing this action; and

8.    Awarding the Rennies any other relief that the Court deems just.

The Rennies reserve the right to file a motion under I.C. § 6-1604 to request leave to add claims for punitive damages if the information learned during discovery warrants doing so.

### JURY DEMAND

Pursuant to I.R.C.P. 38, the Rennies respectfully request a trial by a jury of six on all issues so triable.

DATED this 25th day of July, 2018.

/s/ Michael F. Lutz
Michael F. Lutz (ISB # 9218)
THE SPENCE LAW FIRM, LLC
*Attorney for the Plaintiffs*

COMPLAINT AND DEMAND FOR JURY TRIAL — 22